IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


JIM VENABLE COMPANY, INC.                                    PLAINTIFF


v.                               No. 4:11-cv-639-DPM


DAVID DELVALLE, an individual
d/b/a/ Window Depot USA of Buffalo;
WINDOW DEPOT OF BUFFALO, LLC,
a New York limited liability company; and
ELIZABETH DELVALLE, an individual            DEFENDANTS


## ORDER

At the 7 October 2011 hearing, the Court heard Defendants' motion for
preliminary injunction.  The Court has considered the pleadings, motion,
exhibits, documents on file, and the parties' stipulations of fact in their
proposed Order.  In light of these materials, the motion, *Document No. 3*, is
granted for good cause shown. The Court adopts the parties' suggested order,
slightly modified.  Because the parties could not reach agreement, the Court
has resolved one substantive point: if it is not possible to transfer the phone
number and various social media accounts by 15 December 2011, then the
parties should take the necessary steps to terminate those accounts.

1.     This Court has subject matter jurisdiction over Plaintiff's Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

2.     Venue is proper in this Court because David DelValle contractually agreed to this venue, and Beth DelValle and Window Depot of Buffalo consent to this venue for purposes of this proceeding.

3.     This Court has personal jurisdiction over Defendants because David DelValle contractually agreed to jurisdiction, and Beth DelValle and Window Depot of Buffalo consent to jurisdiction for purposes of this proceeding.

4.     This case primarily involves Defendants' alleged trademark infringement and unfair competition, as well as David DelValle's alleged breach of the Licensee Agreement with Plaintiff.

5.     Plaintiff owns Registration No. 3,505,292 issued on 23 September 2008 by the United States Patent & Trademark Office for Plaintiff's trademark and service mark WINDOW DEPOT USA with a distinctive design (the

-2-

"Registered Logo") for use in connection with vinyl replacement windows, doors, and siding, and retail store services featuring the same goods. *Document No. 3-1*. Plaintiff also owns Registration No. 3,557,561 issued on 6 January 2009 by the United States Patent & Trademark Office for Plaintiff's trademark and service mark WINDOW DEPOT USA in so-called standard character form (the "Registered Name"), for use in connection with the same goods and services. *Document No. 3-2*. Both of these registered marks will be referred to collectively as the "Registered Marks."

6.      Plaintiff is in the business of licensing its Registered Name and Registered Logo to third parties in various locations around the United States for distribution of its products through retail sales and installation of windows and doors under its Registered Marks. Exhibit J to the Motion is a list of Plaintiff's licensees' exclusive territories around the United States. *Document No. 3-10*. Headquartered in Little Rock, Plaintiff has licensed others to operate WINDOW DEPOT USA distributorships under Plaintiff's Registered Marks in 32 locations in 21 states under the same terms and conditions as the Licensee Agreement.

7.    On or about 2 November 2009, Plaintiff and David DelValle entered into the Agreement, a copy of which is Exhibit C to the motion. *Document No. 3-3.* The Agreement designated David DelValle as Plaintiff's exclusive distributor and licensee within the Buffalo Territory (encompassing the Buffalo, New York Metropolitan Statistical Area, including the counties of Niagara, Erie, Wyoming, Chautauqua, and Cattaraugus).

8.    Effective 15 July 2011, Plaintiff terminated the Agreement pursuant to its terms for David DelValle's alleged material breach of the Agreement.

9.    The Agreement prohibits David DelValle from certain activities, providing in relevant part:

> **13: <u>Restrictive Covenant</u>**: During, and for a period of twelve (12) months following any termination of this Agreement by Licensee or Company, Licensee agrees that he shall not directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any similar or competing business operating within the geographic scope of Company's operations. Licensee acknowledges and agrees that the geographic scope of company's operations shall be defined as a minimum of the territory and one hundred (100) miles from any of Company's other Licensee's office locations.

*Document No. 3-3, at 9.*

-4-

10.    Paragraph 19 of the Agreement provides in relevant part:

In view of Licensee's access to the Confidential Information and
Trade Secrets of Company and in consideration of the value of
such property to Company, Licensee expressly acknowledges that
the covenants not to compete and the related restrictive covenants
set forth in the Agreement are reasonable and necessary in order
to protect and maintain the proprietary and other legitimate
business interests of Company and that the enforcement thereof
would not prevent Licensee from earning a livelihood.  Licensee
further agrees that in the event of an actual or threatened breach
by Licensee of such covenants, Company would be irreparable
[*sic*] harmed and the full extent of injury resulting there from
would be impossible to calculate, and company therefore will not
have an adequate remedy at law.  Accordingly, Licensee agrees
that temporary and permanent injunctive relief would be
appropriate remedies against such breach, without bond or
security[.]

*Document No. 3-3, at 10.*

11.    Each of Plaintiff's exclusive distributors or licensees is promised

an exclusive territory, and the Restrictive Covenant provides each with

assurance that one of Plaintiff's former distributors or licensees with

knowledge of Plaintiff's proprietary information and materials will not set up

a competing business nearby. In *Sigma Chemical Co. v. Harris*, 794 F.2d 371 (8th

Cir. 1986), the Eighth Circuit affirmed a district court's enforcement of a

restrictive covenant having no geographical restriction.  The Court stated, "in

the instant case a worldwide restriction was reasonable because Sigma competed worldwide." *Sigma Chemical Co.*, 794 F.2d at 374.   In this case, Plaintiff's Restrictive Covenant is similarly limited to the geographic area where it competes.

12.   Under Arkansas law, the party challenging the validity of a covenant not to compete has the burden to show that it is unreasonable. *Sensabaugh v. Farmers Ins. Exchange*, 420 F. Supp. 2d 980, 985 (E.D. Ark. 2006) (citing *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 254, 987 S.W.2d 722, 726 (1999)).   Defendants failed to satisfy their burden of showing that the Restrictive Covenant is unreasonable; and the Court finds the Agreement to be enforceable against Defendant David DelValle.

13.   To prevail on its claims for unfair competition and trademark infringement under the Lanham Act and common law, Plaintiff must prove that it owns a valid, distinctive trademark and that a substantial likelihood of confusion exists between one of its Registered Marks and that used by Defendants. *First Bank v. First Bank Systems, Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996).

14.    Plaintiff's Registered Logo is sufficiently distinctive to support federal registration and trademark rights.

15.    Under the circumstances of this case, it is likely that confusion would result from Defendants' continued use of Plaintiff's Registered Marks in connection with retail sales and installation of replacement windows and doors in the Buffalo Territory.  Therefore, continued operation of the Buffalo business after termination of the Agreement and any continued use of Plaintiff's Registered Marks would constitute unfair competition and trademark infringement.

16.    Plaintiff has satisfied its burden of establishing the following prerequisites for injunctive relief:

(a)    the probability that the movant will succeed on the merits;

(b)    the likelihood of irreparable harm to the movant;

(c)    the balance between the harm and the injury that will result to the other party by granting the injunction favors the movant; and

(d)    the public interest will be served by granting the injunction.

*Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 112 (8th Cir. 1981) (*en banc*); *Sierra Club v. United States Army Corps of Engineers*, 645 F.3d 978, 989–98 (8th Cir. 2011).

17.     There is a probability that Plaintiff will succeed on the merits of its claims for breach of contract, unfair competition, and trademark infringement.

18.     Under the circumstances of this case, Plaintiff is likely to suffer irreparable harm by Defendants' continued use of Plaintiff's Registered Marks.  Continued use of the same Registered Marks after termination of authorized or licensed use has a great potential for deceiving or confusing consumers into believing that the post-termination use is authorized or that Defendants are affiliated with Plaintiff.

19.     Loss of intangible assets such as reputation and goodwill can constitute irreparable injury, especially when harm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars. *Medicine Shoppe International, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003).

20.     Plaintiff's likely harm outweighs that to Defendant David DelValle resulting from an injunction enforcing the Restrictive Covenant and requiring

the transfer of the Telephone Number and WindowDepotUS.com domain name to Plaintiff.

21.     According to Paragraph 3.1 of the Agreement, "Licensee hereby acknowledges that all uses of the Marks by Licensee shall inure to the benefit of the Company [Plaintiff]."  Because David DelValle voluntarily agreed to restrictions set forth in a contract, any perceived harm to him is outweighed by the harm foreseeable to the Plaintiff. *Emerson Electric Co. v. Rogers*, 418 F.3d 841, 846 (8th Cir. 2005).

22.     The public interest will be served by granting the injunction.

23.     The Lanham Act is a consumer protection law, enacted to protect the public against likelihood of consumer confusion.  *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 (8th Cir. 1980).  There is a strong public and judicial interest in protecting consumers from confusing and deceptive advertising and business practices.  Moreover, the public interest is served by protecting freedom to contract through enforcement of contractual rights and obligations.  *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1145 (8th Cir. 2007).

24. In this case, consumer rights and contractual rights are protected by enforcing the Restrictive Covenant and requiring the transfer of the Telephone Number and WindowDepotUS.com domain name to Plaintiff. Directing Defendants to transfer the Telephone Number to Plaintiff is warranted because it has been associated with Plaintiff's Registered Marks and the WindowDepotUS.com domain name continuously since at least 2007, and Defendants intentionally sought to connect it with Defendants' new name.

Therefore, it is ordered that:

A. Defendant David DelValle is enjoined until 15 July 2012 from directly or indirectly owning, managing, operating, controlling, being employed by, participating in, or being connected in any manner with the ownership, management, operation, or control of any similar or competing business operating within the Buffalo Territory (the Buffalo, New York Metropolitan Statistical Area, including the counties of Niagara, Erie, Wyoming, Chautauqua and Cattaraugus) or within 100 miles of any of Plaintiff's licensees' retail locations as of the date of this Order.

B.     Defendants and each Defendant's employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries, assigns, and all those in concert or participation with any of them, are enjoined from:

(1) imitating, copying, using, reproducing, registering, attempting to register, and displaying any mark the same as or so resembling Plaintiff's Registered Marks (WINDOW DEPOT USA) so as to be likely to cause confusion, mistake, or deception; and

(2) using any false description or representation or any other thing calculated or likely to cause consumer confusion, deception, or mistake in the marketplace with regard to Window Depot or Plaintiff's Registered Marks.

C.     Defendants are required to:

(1)     provide Plaintiff with all account administration, authorization, and information Defendants possess concerning the telephone number 716-706-0504 and needed to enable the telecommunications provider to transfer the telephone number to Plaintiff or to Plaintiff's designee.  If transfer is not possible by 15

-11-

December 2011, then Defendants shall provide the information
necessary to terminate the telephone number.  Defendants shall
cooperate with Plaintiff in dealing with the telecommunications
provider to accomplish these tasks;

(2)   provide Plaintiff with all account administration, authorization,
and information Defendants possess concerning the
WindowDepotUS.com domain name and any other domain name
registered by or for the benefit of any of the Defendants that
includes "Window" and "Depot," or so resembles either of
Plaintiff's Registered Marks  as to be likely to cause confusion,
mistake, or deception therewith, needed to enable Plaintiff to
direct the transfer of any domain names to Plaintiff or to
Plaintiff's designee.  Defendants shall cooperate with Plaintiff in
obtaining each transfer.  Account administration authorization
and information includes, without limitation, the account user
name and password;

(3)   provide Plaintiff with all account administration, authorization,
and information concerning any web page, including the

-12-

Facebook account featuring Plaintiff's Registered Logo atop the Telephone Number, the LocalEdge account featuring Defendants' former signage with Plaintiff's Registered Name, the MySpace account for Window Depot, and the Twitter account for Window Depot, needed to enable Plaintiff to direct the transfer of these accounts to Plaintiff or to Plaintiff's designee. If transfer is not possible by 15 December 2011, then Defendants shall provide the information necessary to terminate these accounts and web pages. Defendants shall cooperate with Plaintiff in obtaining each transfer or termination. Account administration, authorization, and information includes, without limitation, the account user name and password;

(4)    return to Plaintiff any Window Depot materials, including without limitation any Operations Manual, Sales Presentation Manual, pricing materials, and advertising or promotional materials that Defendants possess; and

(5)   remove any reference to Window Depot or either of Plaintiff's Registered Marks from any advertising or Internet presence controlled by Defendants.

D.    No bond shall be required.


So Ordered.


_D.P. Marshall Jr._
D.P. Marshall Jr.
United States District Judge

22 November 2011